UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAVONTE WILDERNESS, | |
| Petitioner, | |
| v. | CAUSE NO. 3:19-CV-487-JD-MGG |
| WARDEN, | |
| Respondent. | |

OPINION AND ORDER

Lavonte Wilderness, a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction for rape, criminal confinement, and strangulation under Case No. 02D06-1506-F3-23. Following a jury trial, on September 16, 2015, the Allen Superior Court sentenced him to forty-eight years of incarceration.

FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> On the evening of August 11, 2014, L.S. was making the return trip to her home in Decatur, Indiana after visiting her family in Chicago for the weekend. She took a bus from Chicago to Fort Wayne, where she had left her car parked near the bus station. While making the three-block walk to her car after getting off the bus, L.S. crossed paths with Wilderness. As soon as she walked past him, Wilderness turned around and pointed a gun at L.S.'s back and told her to keep walking. When they reached L.S.'s car, Wilderness took her keys and cell phone. He unlocked the car, threw her luggage in the trunk, and got in the passenger side. While pointing the

> gun at her, he told L.S. to get into the car and drive. L.S. told him that she did not have enough gas in the car, so they stopped at a gas station. Wilderness threatened to shoot L.S. in the gas station if she did not behave normally.
>
> After L.S. put gas in the car, Wilderness directed her to drive to a dead-end street. Wilderness then yanked the gearshift into park and began choking L.S. He then got out of the car and walked around to the driver's side, where he resumed choking L.S. When L.S. tried to fight back, Wilderness punched her in the eye. Wilderness then dragged L.S. out of the car and raped her vaginally and anally. Afterward, Wilderness got up and walked away. L.S. vomited on the ground, then got into her car and drove home.
>
> While en route to Decatur, L.S. called Theresa Bodle, who went to L.S.'s house and found her lying on the floor, crying and shaking in a fetal position. Bodle called the police and took L.S. to a medical center where she underwent a sexual assault examination. DNA samples collected during the exam were consistent with the DNA profile of Wilderness.
>
> The State ultimately charged Wilderness with Level 1 felony rape, Level 5 felony criminal confinement, and Level 6 felony strangulation. Following a two-day jury trial, Wilderness was found guilty as charged. On September 16, 2015, the trial court sentenced Wilderness to consecutive terms of forty years for rape, six years for criminal confinement, and two and a half years for strangulation, for an aggregate sentence of forty-eight and a half years.

ECF 11-5 at 2-3; *Wilderness v. State*, 55 N.E.3d 394 (Ind. App. 2016).

In the petition, Wilderness argues that he is entitled to habeas relief because the trial court provided an improper instruction to the jury on the commission of an offense while armed with a deadly weapon. He argues that the record lacked sufficient evidence for the jury to find that he used a deadly weapon. He further argues that he received ineffective assistance of counsel because trial counsel did not rely on the probable cause affidavit to object to the prosecution's allegation that he used a firearm, because trial counsel did not present the victim's inconsistent statements, and because

2

trial counsel did not dispute the allegation that he used a firearm. He argues that he received ineffective assistance on direct appeal because appellate counsel conceded that Wilderness committed the crimes as charged.

## PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

On direct review, Wilderness presented his argument regarding the deadly weapon instruction to the Court of Appeals of Indiana and the Indiana Supreme Court,

3

so the court will consider the merits of this argument. ECF 11-3; ECF 11-6. On post-conviction review, Wilderness presented his arguments regarding insufficiency of the evidence and ineffective assistance of counsel to the Court of Appeals of Indiana and the Indiana Supreme Court. ECF 11-9; ECF 11-12. The Court of Appeals of Indiana found that Wilderness waived the insufficiency of the evidence claim by failing to raise it on direct appeal. ECF 11-11 at 7. Therefore, the insufficiency of the evidence claim is procedurally defaulted, but the court will consider the merits of the remaining claims.

## STANDARD OF REVIEW

"Federal habeas review exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

> comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

## ANALYSIS

### Deadly Weapon Instruction

Wilderness argues that he is entitled to habeas relief because the trial court provided an improper instruction to the jury regarding the use of a deadly weapon. He maintains that the instruction implies that he is guilty because it states that he pointed a gun at the victim without any evidentiary support. "[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). "Because it is not enough that there is some slight possibility that the jury misapplied the instruction, the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009). "In reviewing an ambiguous instruction . . . , we inquire whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Estelle*, 502

U.S. at 72. "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Boyde v. California*, 494 U.S. 370, 378 (1990).

At trial, the victim testified that Wilderness held her at gunpoint as she walked from the bus stop to her vehicle. ECF 12-3 at 28-30. While he did not brandish the firearm throughout the entirety of the encounter, she understood that he would use it if she did not comply with his commands. *Id.* at 37-38. The trial court issued the following instructions on the elements of rape, "armed with a deadly weapon," and the burden of proof:

> Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant, Lavonte A. Wilderness,
>
> 2. Knowingly or intentionally
>
> 3. Had sexual intercourse with L.S.
>
> 4. when L.S. was compelled by force or imminent threat of force
>
> 5. and Defendant committed the offense by using or threatening the use of deadly force or the Defendant committed the offense while armed with a deadly weapon.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.
>
> If the State did prove each of these elements beyond a reasonable doubt, you may find the defendant guilty of County I, Rape, a Level 1 felony.
>
> \* \* \*
>
> It is not required that the deadly weapon be held on the victim at all times. The initial showing of deadly force and the victim's awareness of the

6

> defendant's continued constructive possession of the weapon may be sufficient to satisfy the "armed with a deadly weapon" element.
>
> * * *
>
> The defendant has entered pleas of not guilty and the burden rests upon the State of Indiana to prove to each of you, beyond a reasonable doubt, every essential element of the crimes charged. The charges which have been filed are the formal method of bringing the defendant to trial.
>
> The State has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely than not true. In criminal cases, the State's proof must be more powerful than that. It must be beyond a reasonable doubt.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you may find him guilty. If, on the other hand, you think there is a real possibility that he is not guilty, you should give him the benefit of the doubt and find him not guilty.

ECF 12-1 at 60, 66, 73.

On direct appeal, Wilderness argued that the deadly weapon instruction invited the jury to rely on the appellate standard for sufficiency of the evidence. ECF 11-5 at 3-6. The Court of Appeals of Indiana rejected this argument, reasoning the instruction did not invite the jury to violate its obligation to consider the totality of the evidence but merely defined an element of the charged rape offense. *Id.* The appellate court further reasoned that it was appropriate to refer to a deadly weapon in the instructions given its role as an element of the charged offense. *Id.* Additionally, the appellate court found that the instruction did not presume that Wilderness used a firearm during the

7

commission of the charged offense given the instructions explaining and emphasizing the prosecution's burden of proof. *Id.*

After reviewing the State record, the court cannot find that the deadly weapon instruction so infected the entire trial that the conviction of rape violated Wilderness's right to procedural due process. To start, Wilderness's contention that the instruction has no evidentiary support is incorrect. Notwithstanding his concerns about her credibility, the record clearly contains the victim's testimony that he threatened her with a firearm at the outset of the encounter and that she believed that he would use it if she did not comply with his commands.[1]

Wilderness's contention that the instruction implies that he is guilty or indicates that his possession of a firearm was beyond dispute is similarly without merit, particularly when considering the instruction in context. This contention is essentially an argument that the instruction caused the jury to disregard the prosecution's obligation to prove beyond a reasonable doubt that Wilderness used a firearm. But the deadly weapon instruction notes that "armed with a deadly weapon" is an element of an offense, and the other instructions repeatedly advised the jury that the prosecution was required to prove each element of each offense beyond a reasonable doubt. Further, the burden of proof was explained to the jury on several other occasions, including preliminary instructions, trial counsel's opening statement, and the parties' closing

---

[1] For the same reason, the procedurally defaulted claim regarding sufficiency of the evidence would have failed on the merits. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

arguments. ECF 12-1 at 51; ECF 12-3 at 24, 220, 233-35. While there may be "some slight possibility that the jury misapplied the instruction," the court cannot find "a reasonable likelihood that the jury has applied the [deadly weapon] instruction in a way that violates the Constitution." *See Estelle*, 502 U.S. at 71–72. Therefore, the claim regarding the deadly weapon instruction is not a basis for habeas relief.

### Ineffective Assistance of Counsel

Wilderness argues that he received ineffective assistance of trial counsel because trial counsel failed to object to the prosecution's allegation that he used a deadly weapon with statements contained in the probable cause affidavit. He argues that trial counsel failed to present evidence of the victim's inconsistent statement about the firearm in the probable cause affidavit. He further argues that trial counsel failed to rebut the evidence that he raped the victim while armed with a deadly weapon. Finally, he argues that appellate counsel rendered ineffective assistance by conceding that he had committed the crimes as charged.

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S.

9

86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

According to the probable cause affidavit, Detective Criswell and Detective Quate met with the victim in the days immediately following the rape. ECF 12-1 at 15-17. They described the victim's statements regarding the firearm as follows:

> L.S. advised that a male, black (later identified as the defendant Lavonte Wilderness) approached her from behind. She reported that he displayed what she believed to be a handgun and he followed her to her car. Note: It was later discovered that she had not actually seen a gun, but saw something black in his hand and assumed it was a gun.
>
> * * *
>
> She reported that she had parked her car on Harrison Street and as she was walking to it, someone came up from behind her and put (what she thought was) a gun in her back and stated, "Keep walking; just keep walking."

*Id.* The probable cause affidavit also described an interview of Wilderness in which he represented that he engaged in consensual sexual intercourse with the victim. *Id.*

In opening statements, trial counsel noted that the victim had told her account on multiple occasions and asked the jury to focus on whether she had changed the details and whether she acted as though she was under the threat of force. ECF 12-3 at 22-24. The victim testified that, as she walked from the bus station to her vehicle, Wilderness approached her from behind, held a firearm to her back, and told her to walk. *Id.* at 28-30. When they arrived at the vehicle, he told her to get in the car and to drive. *Id.* After a

brief stop at the gas station, she drove to a dead end at his direction. *Id.* There, he parked the vehicle and began strangling her inside the vehicle. *Id.* He threw her on the ground from the vehicle, hit her in the eye, forced her to submit to vaginal and anal intercourse, and left. *Id.* at 30. She vomited, drove her vehicle home and called her supervisor, who met the victim at her home and called the police that night. *Id.* at 32, 38. The police directed her to meet with a nurse for a sexual assault examination. *Id.* at 38. Detective Quate interviewed her, and she identified Wilderness from a photographic line up and took Detective Quate to the scene of the crime. *Id.* at 40-41. On cross-examination, the victim testified that she had possession of her cellphone when they were at the gas station. *Id.* at 55-60. Wilderness had left her alone at the counter with the cashier for twenty to thirty seconds and in her vehicle for less than a minute but she did not contact anyone for assistance. *Id.*

> On direct examination, the victim testified about the firearm as follows:
>
> **Prosecution:** Okay. I want to talk about the gun. You said you felt a gun on your back, tell us how that felt when you first felt the gun on your back.
>
> **Victim:** All I felt was just a hole pointing in my back.
>
> **Prosecution:** Okay. And then, when did you actually see the gun.
>
> **Victim:** When I was -- actually got in the car, when he told me to get in.
>
> **Prosecution:** What did the gun look like?
>
> **Victim:** Small and black.
>
> **Prosecution:** Are you very knowledgeable about guns, L.S.?
>
> **Victim:** No.

11

**Prosecution:** So can you tell us anything more besides small [and] black?

**Victim:** No.

*Id.* at 33-34.

On this issue, trial counsel cross-examined her as follows:

**Trial Counsel:** All right, now you said here that he put something in your back which you believed to be a gun.

**Victim:** Yes.

**Trial Counsel:** Did you see that at that point?

**Victim:** Not at that point, no.

**Trial Counsel:** Okay. Now you first talked to a detective, a Detective Criswell, that night after you came back to Fort Wayne after you got home to Decatur, called the police, came back to Fort Wayne; correct?

**Victim:** I don't recall what detective it was.

**Trial Counsel:** Okay. It wasn't this gentleman, was it?

**Victim:** I spoke to him at the sexual assault clinic.

**Trial Counsel:** Okay, but there was another detective, a different gentleman that you spoke to first; is that correct?

**Victim:** I don't recall that part.

**Trial Counsel:** Okay. Do you remember telling the first detective that you saw that the man approached you from behind and displayed a gun?

**Victim:** No.

**Trial Counsel:** Okay. You told him the same thing, that he pointed something in your back which you believed to be a gun?

**Victim:** Yes.

12

**Trial Counsel:** Okay. Now, the day after or the first time you met with this gentlemen here, Detective Quate, do you remember telling him that you saw something dark in his hand and that you assumed it was a gun?

**Victim:** No.

**Trial Counsel:** Okay. You don't remember that you did not feel a gun in your side?

**Victim:** I felt it in my back.

**Trial Counsel:** In your back? Okay. Do you remember telling him you did not feel the gun in your side?

**Victim:** No, I told him I felt it in my back.

**Trial Counsel:** Okay. Okay, and then a week or so later, maybe a little over a week after you first talked to him, they brought you back to the Fort Wayne Police Department; correct? Or to the sexual assault center?

**Victim:** No.

**Trial Counsel:** Did you talk to them again?

**Victim:** Talk to Officer Quate again?

**Trial Counsel:** Yeah. You remember talking to him after he had obtained and viewed the Marathon video?

**Victim:** Yes.

**Trial Counsel:** Okay. And he showed it to you that time, that was like a week later?

**Victim:** I don't recall that it was a week later.

**Trial Counsel:** Okay. If his records show it was on August 22, would that be true?

**Victim:** It could be.

**Trial Counsel:** Okay. Did you remember telling him at that time that you did not see a gun?

13

**Victim:** No.

**Trial Counsel:** In that meeting?

**Victim:** No.

*Id.* at 49-52.

The victim's supervisor testified that she received a call from the victim after 11:00 p.m. and that she was crying and difficult to understand but conveyed that she was at her home and that someone had hurt her. *Id.* at 69-74. The supervisor called the police and went with her spouse to the victim's residence. *Id.* There, she saw the victim crying, shaking, and lying on the floor in the fetal position covered in mud. *Id.* The victim told her that she had been raped, and the couple took her to a rape crisis center and back home. *Id.*

Nurse Coburn testified that she was a registered nurse who had received advanced training on providing forensic medical care to victims of sexual assault. *Id.* at 90-91. She examined the victim and found petechiae[2] in the whites of her eyes, redness on the front of her neck, and a cervical abrasion. *Id.* at 104-05, 115. She swabbed the victim at multiple locations for the purpose of DNA testing. *Id.* at 116. She also examined the victim three days later and found that the petechiae were no longer visible but a bruise had developed under the left eye. *Id.* at 123-25. She found that her medical findings were consistent with the victim's narrative. *Id.* at 128-29. A forensic

---

[2] Petechiae are "minute hemorrhagic spots, of pinpoint to pinhead size, in the skin, which are not blanched by pressure." STEDMANS MEDICAL DICTIONARY 675260.

14

specialist testified that she identified DNA consistent with Wilderness's DNA in the samples from the victim's vaginal wash, cervical swabs, internal genital swabs, external genital swabs, anal fold swabs, underpants, and a tissue from the underpants. *Id.* at 186-192.

Detective Criswell testified that he met with the victim at the rape crisis center. *Id.* at 137. She told him what happened and assisted him with retracing her route that night, including the bus stop, the gas station, and the dead end, where her vomit remained. *Id.* at 138-142. On cross-examination, Detective Criswell testified that the victim had told him that her assailant had displayed a handgun and directed her into her car but that she did not mention that he held the handgun to her back and did not report that he had forced her to engage in anal intercourse. *Id.* at 147-50. Detective Quate testified that he interviewed the victim three days after the incident when she told him that her assailant had been burned on his left forearm. *Id.* at 152-54. He reviewed surveillance video that verified the presence of Wilderness and the victim at the gas station, and the victim was able to identify Wilderness from a photographic lineup. *Id.* at 155-60. On cross-examination, Detective Quate testified that the victim told him that "[Wilderness] had something dark in his hand and assumed it was a gun." *Id.* at 170-71.

At closing, trial counsel observed that the victim had told her account on at least five separate occasions and pointed out numerous inconsistencies, including her level of certainty that Wilderness had used a firearm, the accessibility and use of her cellphone, and the absence of any mention of forced anal intercourse in some of her reports. *Id.* at

15

222-35. He argued that she did not act as though she was an unwilling participant at the gas station and that her minimal physical injuries were inconsistent with her description of Wilderness's use of force. *Id.* He also explained that the burden of proof rested with the prosecution and that it was significantly higher than a preponderance. *Id.*

On direct appeal, appellate counsel's briefs included an argument challenging the appropriateness of Wilderness's sentence and read as follows:

> With regard to nature of offense, Appellate counsel does concede the severity of the offense of which Mr. Wilderness was convicted. The victim was an unsuspecting woman who was abducted, held against her will, strangled and then raped, all while being threatened with a deadly weapon. However, without minimizing the incident, the nature and circumstances of this offense cannot be considered the absolute worse, and are simply the acts necessary to commit the crimes with which Mr. Wilderness was charged and convicted. Accordingly, the nature and circumstances do not justify the maximum sentence permitted by law.

ECF 11-3 at 22; ECF 11-6 at 12.

On post-conviction review, the Court of Appeals of Indiana rejected the claim that trial counsel failed to present any evidence at trial. ECF 11-11 at 9-12. The appellate court found that trial counsel's strategy was to challenge the prosecution's case on the element of consent and to attack the victim's credibility by focusing on the inconsistencies in her accounts. *Id.* The appellate court observed that trial counsel's choices were limited given the victim's testimony, Wilderness's admission that he engaged in sexual intercourse with the victim, the DNA analysis, the victim's vomit at the dead end, and the victim's injuries. *Id.* It found that, if Wilderness had testified, it

16

would have been highly unlikely that the jury would have credited his narrative that the sexual encounter was consensual in light of the evidence presented against him. *Id.*

The Court of Appeals of Indiana also rejected Wilderness's other ineffective assistance claims. The appellate court found that trial counsel raised the inconsistencies in the victim's accounts with the victim and the two detectives. *Id.* at 13. It found that trial counsel could not have raised a valid objection to the prosecution's assertion that Wilderness used a firearm because the victim's testimony supported it and that her prior inconsistent statements may have affected her credibility but it did not render such testimony inadmissible. *Id.* It further found Wilderness did not explain what appellate counsel should have done differently on direct appeal. *Id.* at 14.

After reviewing the record, the court cannot find that the State court made an unreasonable determination on the ineffective assistance of counsel claims. As articulated by the State court, trial counsel pursued a reasonable strategy given the overwhelming strength of the prosecution's case against Wilderness; that strategy involved highlighting the victim's prior inconsistent statements, which trial counsel did repeatedly; and trial counsel had no valid basis to object to the prosecution's assertion that Wilderness committed the rape while using a firearm. Further, appellate counsel did not concede that Wilderness had committed the crimes as charged but instead discussed the criminal offenses for which Wilderness was convicted. Discussing the severity of these offenses was necessary to challenge the appropriateness of Wilderness's lengthy sentence and does not constitute deficient performance. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007) ("[Appellate courts] may revise a

17

sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."). Therefore, the claims that Wilderness received ineffective assistance of counsel are not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Wilderness to proceed further.

For these reasons, the court DENIES the habeas corpus petition (ECF 1); DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on April 12, 2021.

s/ JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT
